IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DBSI SIGNATURE PLACE, LLC, an Idaho limited liability company, ) ) ) | |
| Plaintiff/Counterdefendant, ) ) | Case No. CV 05-051-S-LMB |
| v. ) ) ) | **ORDER** |
| BL GREENSBORO, L.P., a Texas limited partnership, LS NORTHLINE, LLC, a Texas limited liability company, and MARK J. SULLIVAN, ) ) ) ) ) | |
| Defendants/Counterclaimants. ) _____ ) | |

Currently pending before the Court are Plaintiff's Motion For Reconsideration (Docket No. 112), Plaintiff's Motion for Summary Judgment on Defendants' Remaining Counterclaim and Fifteenth Affirmative Defense (Docket No. 113), Defendants' Motion for Partial Summary Judgment (Docket No. 114), and Defendants' Motion for Sanctions (Docket No. 122). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

**I.**

**BACKGROUND**

The background and history of this action have been previously set forth in prior orders, however, certain information relevant to the pending motions will be restated here. In May of 2004, DBSI Housing, Inc. ("DBSI Housing"), the affiliated predecessor in interest to

**ORDER - 1**

Plaintiff/Counterdefendant DBSI Signature Place LLC ("Plaintiff") began negotiating with Defendant/Counterclaimant BL Greensboro, L.P. ("Greensboro") for the purchase of a commercial office complex ("Signature Place") in Greensboro, North Carolina. *Plaintiff's Statement of Undisputed Material Facts*, ¶¶ 1, 3 (Docket No. 79, Att. 2); *Second Amended Complaint and Demand for Jury Trial*, ¶ 9 (Docket No. 55). Defendant/Counterclaimant LS Northline, LLC ("Northline") is the sole general partner of Greensboro and Defendant/ Counterclaimant Mark J. Sullivan ("Sullivan") is the vice-president of Northline. *Second Amended Complaint and Demand for Jury Trial*, ¶¶ 3-4 (Docket No. 55). In this capacity, Sullivan communicated with various individuals at DBSI Housing[1] to facilitate negotiations for, and the eventual purchase of, Signature Place. The parties' attorneys also communicated and exchanged emails and contract drafts during the negotiation process. *See Harrison Affidavit*, p. 2 & ¶ 5 (Docker No. 116, Att. 3) (explaining that counsel for the parties engaged in "substantial negotiations" by telephone and email correspondence, as well as by the exchange of drafts).

On July 8th and 9th of 2004, the parties consummated negotiations and executed an Earnest Money Contract ("Contract") for the purchase of Signature Place. *Plaintiff's Statement of Undisputed Material Facts*, ¶ 3 (Docket No. 79, Att. 2); *Graham Affidavit* [2], Exhibit E (Docket No. 65, Att. 3). As part of the Contract, Plaintiff assumed the tenant leases for

---

[1] The remainder of this Order will use the term Plaintiff to refer to both DBSI Signature Place, LLC, and DBSI Housing for ease of discussion.

[2] There are several affidavits by Christopher Graham in the record, some labeled as "first" affidavits and some as "supplemental" affidavits because they were submitted in support of or opposition to several different motions. To avoid confusion, the Court has used the docket numbers as an additional reference to the Graham affidavits, instead of re-labeling the affidavits by number in the order they were filed.

**ORDER - 2**

<mark>Case 1:05-cv-00051-LMB Document 129 Filed 11/28/06 Page 3 of 18</mark>

Signature Place. *Graham Affidavit*, Exhibit F (Docket No. 65, Att. 3). The Contract provided that: "[a]ny rents or other charges subsequently collected by [Plaintiff] which are owing to [Greensboro] by tenants or occupants of the Real Property for periods prior to the Closing Date shall forthwith be paid by [Plaintiff] to [Greensboro], including without limitation base escalation or pass-through collection of operating expense amounts." *Graham Affidavit*, Ex. A, p. 10 (Docket No. 114, Att. 2).

Plaintiff filed this action on January 31, 2005, alleging that Defendants breached their contractual obligations and asserting claims for fraud and a violation of the consumer protection act. *Second Amended Complaint* (Docket No. 55). Defendants counterclaimed for breach of contract, alleging that (1) Plaintiff breached the assumption agreement and (2) Defendants are entitled to a setoff based on Plaintiff's alleged failure to reimburse Defendants for rents or other charges collected after Closing, pursuant to section 8.4 of the Contract. Both parties filed motions for summary judgment in January of this year. (Docket Nos. 79 & 80). The Court (i) denied Defendants' Motion for Summary Judgment, (ii) granted Plaintiff summary judgment on a prepaid rent claim and on Defendants' first counterclaim, (iii) denied Plaintiff's request for summary judgment on all other claims, and (iv) allowed additional time for discovery and the filing of dispositive motions on Defendants' second counterclaim. *Order* (Docket No. 107); *Order* (Docket No. 110). Each party now seeks partial summary judgment on this second counterclaim.[3]

---

[3] The second counterclaim is also asserted by Defendants as an affirmative defense. Thus, the ruling on the second counterclaim also applies to Defendants' fifteenth affirmative defense.

**ORDER - 3**

## II.

## MOTION FOR RECONSIDERATION

Plaintiff has moved for reconsideration of the Court's May 9, 2006 Order denying, in part, its first Motion for Summary Judgment.  *Plaintiff's Motion For Reconsideration* (Docket No. 112).  Plaintiff had requested summary judgment, arguing that Defendants breached section 9.4(e) of the parties' Contract by reporting that no work had been performed for which they had not paid.  *Plaintiff's Reply in Support of Motion for Summary Judgment*, p. 6 (Docket No. 98); *see also Second Amended Complaint and Demand for Jury Trial*, ¶¶ 32, 33 (Docket No. 55).  Section 9.4(e) of the Contract provides:  "Liens.  No labor has been performed, nor materials supplied to Seller for the Property which the Seller has not fully paid."  *Plaintiff's Statement of Undisputed Material Facts*, ¶ 25 (Docket No. 79, Att. 2).

In the May 9, 2006 Order, it was determined that Section 9.4(e) "is subject to more than one interpretation" and because "both interpretations are reasonable, a genuine issue of material fact exists" for the trier of fact to resolve.[4]  *Order*, pp. 19-20 (Docket No. 110).  Plaintiff now requests that the Court address whether any ambiguity in Section 9.4(e) should be resolved in Plaintiff's favor, as argued by Plaintiff in its first Motion for Summary Judgment.  *Plaintiff's Memorandum in Support of Motion for Reconsideration*, p. 3 (Docket No. 112, Att. 1).  Plaintiff asserts that the provision should be construed in its favor because, according to North Carolina

---

[4]  The two interpretations noted by the Court are: (1) "It could be read as stating that no labor has been performed for which the Seller has not fully paid and that no materials have been supplied to Seller for the Property which the Seller has not fully paid," and (2) "using the term 'Seller for the Property,' as Defendants suggest, would require that the provision be read to provide that no labor has been performed 'to Seller for the Property' for which the Seller has not fully paid."  *Order*, p. 19 (Docket No. 110).

**ORDER - 4**

law, "[a]ny ambiguity in a written contract is construed against the party who prepared the writing." *Adder v. Holman & Moody, Inc.*, 219 S.E.2d 190, 196 (N.C. 1975). To the extent Plaintiff's Motion requests the Court review the legal question of an ambiguity being resolved in favor of the non-drafting party, it will be granted.

At the time of the May 9, 2006 ruling on Plaintiff's first Motion for Summary Judgment, there was evidence and information in the record explaining that the Contract was "prepared by [Defendants'] attorney and counsel for [Plaintiff]," that is, it was "negotiated between the two attorneys," involved "many drafts," and "took a long time." *Third Burns Affidavit*, Ex. C (Sullivan Deposition), p. 60 (Docket No. 79, Att. 3). In addition, Defendants had noted in their summary judgment response papers that "[a]lthough the Earnest Money Contract was initially prepared by counsel for the Greensboro Defendants, the parties exchanged at least nine (9) separate drafts of the [Contract] prior to its execution."[5] *Response to DBSI's Statement of Undisputed Material Facts*, ¶ 7 (Docket No. 94). *See also Graham Affidavit*, ¶ 2 & Ex. A at p. 17 (Docket No. 91, Att. 2) (providing the first pages of drafts the parties exchanged). Thus, the Court did not apply the principle that ambiguities should be construed against the party who drafted the instrument because the record demonstrated that both parties and their counsel actively participated in negotiations leading to drafting of the final version of the Contract.

---

[5] The latest information in the record is not inconsistent. Defendants' attorney has averred that "the contract went through at least seven (7) revisions." *Harrison Affidavit*, ¶ 3 (Docket No. 116, Att. 3). The latest information also confirms that the Contract was heavily negotiated. *See, e.g., id.* This new information is contained in the *Harrison Affidavit*. Plaintiff has requested that the Court strike this affidavit from the record, *Plaintiff's Reply*, pp. 2-3 (Docket No. 120); however, this request will be denied because much of the information provided in the affidavit was already provided in connection with the first summary judgment proceedings, was not relied on to Plaintiff's detriment in the Court's current decision on Plaintiff's requested reconsideration, and is timely with regard to the current summary judgment proceedings.

**ORDER - 5**

Even if Greensboro had chosen the language in Section 9.4(e) without any input or negotiation with Plaintiff's counsel, the rule Plaintiff relies on (known as the rule of *contra proferentum*[6]) "is usually applied in cases involving an adhesion contract or where one party is in a stronger bargaining position, although it is not necessarily limited to those situations." *Joyner v. Adams*, 361 S.E.2d 902, 905-06 (Ct. App. N.C. 1987). In *Joyner*, the court concluded that the rule was "improvidently invoked" where, as here, the parties were at arms length and were equally sophisticated. *Id.* at 906. Although the court in *Joyner* also commented that "[b]efore this rule of construction should be applied, the record should affirmatively show that the form of expression in words was actually chosen by one [party] rather than by the other," *id.* (alteration in original, citation and internal quotation marks omitted), here, nothing in the record at the time of the May 9, 2006 ruling affirmatively shows that Defendants chose the language in Section 9.4(e) without any input by or negotiation with Plaintiff's counsel.[7]

New information provided by the parties in connection with the pending Motion for Reconsideration indicates that Section 9.4(e) was changed in a draft prepared by Greensboro's counsel to the language contained in the final draft. *See Plaintiff's Reply*, p. 4 (Docket No. 120); *Harrison Affidavit*, Exs. B-2 & B-3 (Docket No. 116, Atts. 4 & 5). However, this information was not in the record at the time the Court ruled on Plaintiff's first summary judgment request.

---

[6] *See E.I. du Pont Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (explaining that the rule of *contra proferentum* is one of "last resort" and "the justification for applying such rules pales in a situation . . . where the terms of an agreement resulted from a series of negotiations between experienced drafters").

[7] Indeed, Plaintiff's counsel first proposed the addition of 9.4(e) and it appears that the language was changed to its final form in a later draft submitted by Greensboro's counsel. *See Harrison Affidavit*, ¶ 3; Ex. B-2 at p.13; Ex. B-3 at p. 12 (Docket No. 116, Att. 3).

**ORDER - 6**

Additionally, there is no information in the record as to why this change was made and it is possible that it was made as part of the oral negotiation process with Plaintiff's counsel because the change occurred sometime during the month-long negotiation process and after Defendants provided Plaintiff with the first draft. *See Harrison Affidavit*, p. 2 & ¶ 5 (Docket No. 116, Att. 3) (explaining that counsel for the parties engaged in "substantial negotiations" by telephone and email correspondence, as well as by the exchange of drafts).

As in *Joyner*, the parties here are both "experienced in the real estate business," "bargained from essentially equal positions of power," and "engaged in a fairly protracted negotiation process." *Joyner*, 361 S.E.2d at 906. *See also Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 555 n.2 (E.D.N.C. 2000) (explaining that "when the parties have equal bargaining power and negotiate the contract there is no need to construe the policy against the drafter"). Also, there is no indication that Plaintiff objected to the words used in Section 9.4(e). Other federal courts applying North Carolina law have considered the non-drafting party's lack of comment on proposed language when determining whether to apply the rule of *contra proferentum*. *See, e.g., Fountain Powerboat*, 119 F. Supp. 2d at 555 (concluding that both parties had an equal bargaining position and finding no reason to construe any ambiguous terms against the original drafter, in part, because the contract was negotiable); *In re HWC Liquidating Co.*, 1999 WL 33631231, *5 (W.D.N.C. 1999) (stating that "[w]hile it may be true as a general rule that ambiguities are construed against the drafter, there are a number of reasons why that principle should not apply," including when the contracting parties are sophisticated, commercial entities who negotiated on equal footing and the language at issue was accepted without negotiation or comment).

**ORDER - 7**

In conclusion, upon reconsideration and based on the information in the record at the time of the May 9, 2006 Order, the Court cannot conclusively determine that Defendants drafted the language in section 9.4(e) on their own without any input by or negotiation with Plaintiff's counsel. In addition, as noted above there is nothing in the record to indicate that Plaintiff objected to the Contract language at issue. Thus, a genuine issue of material fact exists as to whether Greensboro can be viewed as the sole drafter of the Contract and, more particularly, the provision at issue. These circumstances preclude summary judgment in Plaintiff's favor and the Court reaffirms its May 9, 2006 Order.[8]

### III.

### MOTIONS FOR PARTIAL SUMMARY JUDGMENT

A.   **Standards of Law**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S.

---

[8] Defendants assert that Plaintiff's Motion is not based on an appropriate ground for reconsideration. *Defendants' Response to Plaintiff's Motion for Reconsideration*, p. 6 (Docket No. 116, Att. 1). Considering that the Court has ruled in Defendants' favor on the Motion, the issue of whether Plaintiff's Motion is based on the appropriate standard and grounds for reconsideration need not be determined.

**ORDER - 8**

317, 322 (1986).  If the nonmoving party fails to make such a showing on any essential element of the party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.  *See also* Fed. R. Civ. P. 56(e).[9]

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment.  An issue is "material" if it affects the outcome of the litigation.  An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Ninth Circuit Court of Appeals cases are in accord.  *See, e.g., British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.  *Id*. at 631.  That is,

---

[9]  Rule 56(e) states that, in responding to a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**ORDER - 9**

"if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id*.

In order to withstand a Motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs.*, 882 F.2d at 374 (citation omitted).  Moreover, where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

In recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a Motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id*.  A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the *substantive law* governing the claim or defense.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)) (emphasis added).

**ORDER - 10**

**B.      Section 8.4(a) of the Parties' Contract**

Both parties have filed motions for summary judgment on Defendants' counterclaim and fifteenth affirmative defense, each of which request a setoff for "[a]ny rents or other charges subsequently collected by Purchaser [Plaintiff] which are owing to Seller [Greensboro] by tenant or occupants of the Real Property for periods prior to the Closing Date," as required by Section 8.4(a) of the parties' Contract.[10]  *Answer to Second Amended Complaint*, ¶¶ VI, VIII (Docket No. 90); *see also Plaintiff's Motion for Partial Summary Judgment* (Docket No. 113), *Defendants' Motion for Partial Summary Judgment* (Docket No. 114).

Section 8.4(a) of the Contract provides that "[a]ny rents or other charges *subsequently collected* by [Plaintiff] which are owing to [Greensboro] by tenants or occupants of the Real Property *for periods prior to the Closing Date* shall be forthwith paid by [Plaintiff] to [Greensboro], including without limitation base escalation or pass-through collection of operating expense amounts."  *Graham Affidavit*, Ex. A, p. 10 (Docket No. 114, Att. 2) (emphases added). In early 2005, Plaintiff collected a total of $137,997.23 from the tenants for their respective pro rata shares of the 2004 operating expenses and real estate taxes.  *Third Attiani Affidavit* (Docket No. 118, Att. 3).  Greensboro claims that it is entitled to 75% of this amount (or $103,497.92) pursuant to Section 8.4(a) because it owned Signature Place during the nine month period from January through September 30, 2004.  *Defendants' Reply Memorandum*, p. 3 (Docket No. 121).

---

[10]  Defendants stipulated at the November 8, 2006 hearing and in their briefing that summary judgment should be entered on this counterclaim/defense as it relates to Defendant Northline and Defendant Sullivan, because they were not parties to the Contract.  *See Response to DBSI's Motion for Summary Judgment*, p. 3 (Docket No. 117).  Accordingly, the counterclaim/defense against Northline and Sullivan will be dismissed, and this section will address Defendants' counterclaim only as it relates to Defendant Greensboro.

**ORDER - 11**

Plaintiff argues that there is no amount due to Greensboro under this section because on the Closing Date (September 30, 2004), the total operating expenses did not exceed the amount each tenant was responsible for paying as their pro rata share of 2004 operating expenses under the terms of the leases. The tenant leases at issue provide that tenants are obligated to pay a pro rata share of operating expenses and taxes that are in excess of those incurred by the landlord in a base year designated in the leases. Thus, tenants are not required to make any payments to the landlord for these expenses unless and until the landlord has first incurred expenses exceeding those for the designated base year.

At the time of Closing, the taxes and operating expenses incurred by the landlord (Greensboro) were below the threshold amounts of the base years specified in the various leases. *See Plaintiff's Statement of Undisputed Facts*, ¶ 11 (Docket No. 113, Att. 3). Plaintiff argues that it does not owe anything to Greensboro under this section because, although Plaintiff collected money from tenants after the September 30, 2004 closing, the money collected was not owing to Greensboro *as of the closing date* because the tenants did not yet owe anything pursuant to their leases. *Plaintiff's Reply*, p. 3 (Docket No. 119). For example, UBS Paine Webber was responsible for paying a portion of operating expenses if the total the landlord paid for the year exceeded $1,459,161.60 (determined from a year 2000 base year). *Second Attiani Affidavit*, Ex. B (Docket No. 113, Att. 4). Up until September 30, 2004, the landlord (Greensboro) had paid only $1,358,769 in operating expenses—an amount less than that designated in the Paine Webber lease for the base year. Also, as Plaintiff points out, Section 8.4(a) does not mention that operating expenses and taxes should be prorated. *Plaintiff's Memorandum in Support of Motion for Summary Judgment*, p. 6 (Docket No. 113, Att. 2).

**ORDER - 12**

On the other hand, Greensboro argues that Section 8.4(a) contemplates the subsequent collection of operating expenses and taxes and thus, that collection would take place after the end of the year when the 2004 operating expenses and taxes were finally determined. *Response to DBSI's Motion for Summary Judgment*, p. 5 (Docket No. 117). In other words, the nine month amount for operating expenses paid by Greensboro through September 30, 2004 should not be used to calculate what, if anything, Greensboro is owed under Section 8.4(a), because what each tenant is responsible to pay is based on a *year end* total as compared to a *base year*. Greensboro also argues that the subsequent collection is reinforced by Section 8.4(g), which provides that the provisions of Section 8.4 "shall specifically survive the closing period for a period of one year." *Response to DBSI's Motion for Summary Judgment*, p. 6 (Docket No. 117). In short, Greensboro believes that the "only reasonable construction" of Section 8.4(a) is that Plaintiff is required to reimburse Greensboro for nine months worth of the 2004 taxes and operating expenses received from tenants. *Id.* at p. 5.

After carefully considering and analyzing the evidence in the record and studying the language of Section 8.4(a), the only reasonable conclusion that can be reached at this time is that Section 8.4(a) is subject to more than one reasonable interpretation, as aptly argued by both parties. Because the language in 8.4(a) is ambiguous and both interpretations are reasonable, a genuine issue of material fact exists. Therefore, interpretation of the contract is for the trier of fact. *See Holshouser v. Shaner Hotel Group Props. One Ltd. P'ship*, 518 S.E.2d 17, 23 (N.C. Ct. App. 1999) (explaining that "[a]n ambiguity exists where the language of the contract is fairly and reasonably susceptible to either of the constructions asserted by the parties") (citation and internal

**ORDER - 13**

quotation marks omitted).[11]  Accordingly, both parties' motions for partial summary judgment are denied.

## IV.

## MOTION FOR SANCTIONS

Defendants have requested that the Court impose sanctions on Plaintiff based on their claim that Plaintiff failed "to produce, pursuant to a written request, a knowledgeable Federal Rule of Civil Procedure 30(b)(6) witness and/or make any substantive attempt to educate its Rule 30(b)(6) corporate designee, Michael Attiani, on the subject matter of the proposed deposition." *Defendants' Memorandum in Support of Sanctions*, pp. 1-2 (Docket No. 122, Att. 1).  Although the deposition notice says nothing about it being a Rule 30(b)(6) deposition, nor does it provide a description of the matter on which Mr. Attiani would be deposed, *Sixth Burns Affidavit*, Ex. A (Docket No. 126), it appears reasonable to assume that counsel for both parties intended the deposition of Mike Attiani to be pursuant to Rule 30(b)(6).  *See Graham Affidavit*, Ex. B (letter from Defendants' counsel requesting a 30(b)(6) deposition) & Ex. C (email from Plaintiff's counsel indicating that Mike Attiani would probably be the deponent and defense counsel should send over a 30(b)(6) deposition notice) (Docket No. 122, Att. 3).  Additionally, Defendants'

---

[11] Plaintiff has argued that any ambiguity in the Contract must be construed against Greensboro as the initial drafter of the Contract.  *Plaintiff's Reply*, pp. 4-5 (Docket No. 119).  As discussed above, this rule will not be applied where the parties are sophisticated business entities, represented by counsel, who participated in a lengthy negotiation process.  Although the language in 8.4(a) was not changed from the first draft prepared by Greensboro's counsel, when a contract is negotiable and there is no indication that the other party objected to the language proposed in the first draft, application of the rule of *contra proferentum* is not required.  *See Fountain Powerboat*, 119 F. Supp. 2d at 555 n.2 (explaining that "when the parties have equal bargaining power and negotiate the contract there is no need to construe the policy against the drafter").  The proposed language certainly could have been discussed and agreed to in a telephone conversation or an email exchange during the month-long negotiation process.

**ORDER - 14**

counsel described in a letter to Plaintiff's counsel the subject matter Defendants would like the 30(b)(6) deposition to cover, i.e., "the basis for DBSI's conclusion that there are no amounts due and owing BL Greensboro under section 8.4 of the Earnest Money Contract."  *See Graham Affidavit*, Ex. A (Docket No. 122, Att. 3).

At issue are three sets of invoices provided to Defendants by Plaintiff.[12]  Mr. Attiani testified at his deposition that the first set of invoices had "all been withdrawn," were "being revised," and "are incorrect."  *Graham Affidavit*, Ex. G, p. 36 (Docket No. 122, Att. 5).  With regard to the third set of invoices, he testified that he had no idea whether the invoices had been sent to the tenants.  *Id.* at pp. 51-53.  After his deposition, Mr. Attiani sought to confirm which invoices had been sent to the tenants and was able to confirm that the third set of invoices were the ones billed to tenants in 2005 for their portion of the 2004 taxes and operating expenses.  *Third Attiani Affidavit* (Docket No. 118, Att. 3).  Included with Mr. Attiani's Third Affidavit setting forth this information is a document (Exhibit B) detailing the amount collected by Plaintiff for the tenants' respective pro rata shares of the 2004 real estate taxes and operating expenses.  This document indicates that the tenants paid Plaintiff for these expenses in April, May, and June of 2005.  *Third Attiani Affidavit*, Ex. B (Docket No. 118, Att. 3).  Exhibit B was not provided to Defendants during discovery but instead was prepared by Mr. Attiani after his deposition and after further review of Plaintiff's documents.

---

[12]  The first set of invoices are Exhibit 8 to the Attiani Deposition, provided in the record in the Graham Affidavit, at Exhibit D (Docket No. 123, Att. 4).  The second set of invoices are Exhibit 17 of the Attiani deposition and are in the record at Exhibit F to the Graham Affidavit.  The third set of invoices, and the set that Plaintiff has now confirmed as those sent to the tenants, are Exhibit 14 to the Attiani deposition and included in the record as Exhibit E to the Graham Affidavit.

**ORDER - 15**

The sanctions requested are Defendants' attorney fees and costs for expending time to prepare the affidavit of Mark J. Sullivan in Support of Greensboro's Motion for Partial Summary Judgment. *Defendants' Memorandum in Support of Sanctions*, p. 3 (Docket No. 122, Att. 1). Defendants argue that Mr. Attiani provided information in his Third Affidavit inconsistent with that given at his deposition, and complain that his affidavit includes Exhibit B–a document not produced in this action. *Id.* Defendants contend that these actions required them to calculate the 2004 real estate taxes and operating expenses when Plaintiff could have provided this information had it thoroughly and diligently reviewed its records before the deposition. Defendants describe the problem created as follows: "Until Greensboro received Attiani's Third Affidavit, DBSI led Greensboro to believe that the Signature Place tenants had not been invoiced for reimbursement of the 2004 operating expenses and taxes and, more important, that DBSI had not collected any of the money Greensboro asserts is due under section 8.4 of the Earnest Money Contract." *Reply Memorandum in Support of Motion for Sanctions*, p. 3 (Docket No. 127).

While the failure to designate a Rule 30(b)(6) designee or to appear at a Rule 30(b)(6) deposition are sanctionable, it is only if the failure to appear at the deposition comes "after being served with proper notice." Fed. R. Civ. P. 37(d). Thus, even if (as Defendants argue) Plaintiff's production of Mr. Attiani equates to a failure to provide a Rule 30(b)(6) deponent, Defendants had not technically provided proper notice under the rules that the deposition was being conducted pursuant to Rule 30(b)(6). Accordingly, sanctions will not be imposed based on Mr. Attiani's appearance at the deposition noticed as a deposition "duces tecum." Because the deposition, as noticed, was of Mr. Attiani in his personal capacity and for purpose of obtaining documents, and not a 30(b)(6) deposition of Plaintiff, and because it further appears that Mr.

**ORDER - 16**

Attiani testified to what he knew in his personal capacity, an award of sanctions is not appropriate.

Defendants seek the additional sanction of having Mr. Attiani's Third Affidavit stricken from the record because, they allege, the Affidavit contains information inconsistent with the deposition testimony. *Defendants' Memorandum in Support of Sanctions*, p. 13 (Docket No. 122, Att. 1). At his deposition, Mr. Attiani repeatedly asserted that he was uncertain which of the invoices were billed to the tenants and stated his belief that the first two sets of invoices were inaccurate. *See Sixth Burns Affidavit*, Ex. B, pp. 56-59 (Docket No. 126, Att. 2); *Graham Affidavit*, Ex. G, p. 36, 51-53 (Docket No. 122, Att. 5). Thus, his Third Affidavit, claiming that the third set of invoices were accurate, is not necessarily inconsistent with his uncertainty at the deposition. Additionally, Mr. Attiani prepared Exhibit B in response to Defendants' summary judgment Motion to provide a one-page summary of the information provided in Mr. Attiani's Third Affidavit. Because the information in the Affidavit has not been excluded as inconsistent with Mr. Attiani's deposition testimony, the summary he prepared also is not excludable.[13]

---

[13] The Court notes, however, that this conflict likely could have been avoided had Plaintiff more diligently and thoroughly reviewed its documents to adequately respond to and supplement Defendants' discovery requests and had Plaintiff notified Defendants that it would not produce Mr. Attiani as a Rule 30(b)(6) deponent without first receiving formal notice.

**ORDER - 17**

V.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's Motion For Reconsideration (Docket No. 112) is DENIED.

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 113) is GRANTED, in part, and DENIED, in part.  Summary judgment is granted to Plaintiff on Defendants' counterclaim and fifteenth affirmative defense only to the extent brought by Defendants LS Northline, LLC, and Defendant Mark Sullivan as stipulated by the parties at the November 8, 2006 hearing.  The counterclaim and affirmative defense brought by Defendant Greensboro remains, and the Motion as it relates to Greensboro is DENIED.

3. Defendants' Motion for Partial Summary Judgment (Docket No. 114) is DENIED.

4. Defendants' Motion for Sanctions (Docket No. 122) is DENIED.

DATED:  **November 28, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER - 18**